Good morning, your honors. May it please the court. Daniel Tibbitt on behalf of Vincent Cash. I'd like to reserve two minutes for rebuttal. We raised two issues related to jury instructions in our brief and then we raised one issue related to the denial of a motion to suppress. I'd like to use the limited time at oral argument to focus on the motion to suppress issue unless the court directs me otherwise. The search in this case was an administrative search conducted by a TSA officer at LAX. This court about 50 years ago in Davis recognized the obvious danger that baggage screening will be subverted into a general search for evidence of a crime and said that an administrative baggage search must be as limited in its intrusiveness as is consistent with the satisfaction of the administrative need that justifies it. The only administrative need justifying these is the discovery of explosives or weapons, items that could be dangerous for air travelers in this country. And the intrusiveness in this case was taking a knife and slicing open a package inside an air traveler's checked luggage. The United States Supreme Court has been clear, including in Florida v. Wells, that officers cannot be granted limitless discretion to conduct administrative searches. And we believe that the primary problem with this search was that the record shows that this officer both had and exercised limitless discretion to search. Wells says there has to be some guidance that cabins, guides, limits the discretion of officers. In Wells it was an inventory search of a vehicle and the officers decided they wanted to open up a trunk that was in the car and the court said that without some guidance from the administration, just the officers decided they want to do that is insufficient and makes the search illegal. In this case, the record is from TSA officer Soto that if he does not feel happy or okay or he sees something he does not like, then he will open up a package. He will, in this case, slice open a package with a knife. The officer said something might be in there. He could not articulate any specific thing that he was concerned was in there other than that something could be in the package, something might be in there. I have a question. Isn't this type of search much different from search of a car that you stop on the road because a package like this could be an explosive to blow the whole plane up, right? Well, it is different from search of a car under, you know, the normal Terry stop type rationale where there is some evidence of criminal activity. This is an administrative search that does not require that, but I think it is analogous to the administrative search in Florida v. Wells and that is what this court has consistently held with the TSA searches. Obviously, all of us are Americans. All of us have lived the last 20 years in this country where there has been even heightened air safety concerns. Yes, it is a proper purpose to search for explosives or weapons on a plane. They did one of these external looks for explosives, but I thought there was testimony in the record and it certainly seems commonsensical that it is not necessarily the case that if there is explosives inside, it is going to be shown on the outside of the package, especially in this instance where the package was so carefully wrapped. It wouldn't seem all that difficult to just wipe off the outside of the package and there wouldn't be any explosives. I thought that was one of the things Soto said. Is your argument that once there is a negative search for external explosives, that is the end? Is that your argument? Not necessarily. My argument is, first of all, your Honor is correct that the government has these explosive trace detection machines at LAX and presumably at other airports for exactly this reason. The officer swiped all six sides of the package, put the swabs into the explosive trace detection machine and that machine returned negative results for explosives. At that point, in order to go further and open the package, it is our position that there would have to be either some sort of evidence of guidance that doesn't just apply to Officer Soto, but applies to all TSA officers all over this country that tells them in what situations they can do that, which there was no burden to present, or he would have had to have articulated something prohibited at air travel that he believed this item to be, which he did not do. You are arguing that the protocol is insufficient and that the government did not meet their burden of showing in this case that there is any protocol other than it is up to each individual officer to feel okay or feel right. Basically, there is nothing cabinet discretion in this situation. Any package in any bag can be, under the government's theory, under this record, open by TSA officers with nothing more than, well, it is a closed package. I don't know what is inside. The only way to find out is to open it up. The cases are clear that that is insufficient. That is our primary argument. It is clear that it is insufficient. I guess I thought in terms of airport stuff that they go into a suitcase, they can unzip subcategories in the suitcase and they can look inside everything. No, they can't? No, they cannot. Under this court's decision, for instance, in McCarty, which is a TSA airport search, in that case, the x-ray machine alerted, so they took a look at the package. When they took a look at the package, some items fell out, photographs or papers, and this court was analyzing the search of those photographs and papers. The officer in that case articulated a rationale for needing to check them because there could be a sheet explosive, something that can be concealed between papers that could pose a threat to air safety. The officer was allowed to leaf through those papers in the course of doing so-found child pornography. The court was not saying and has never said, no court has said, they have said the opposite, that there is just carte blanche to search anything in an air traveler's luggage. If the officer articulated a TSA guidance that said, okay, the kids' books have alerted in the x-ray machine, so we have to do further investigation of them, and I'm aware of an item that could cause a threat to air safety. But here, an explosive person was called, and he did have an explanation of why he had to figure out whether there was an explosive, and he said it wasn't one. Factually, the moment that matters is when this officer decided to take a knife and cut this package after it had tested negative in the explosive machine. The explosive expert was not there at that point. The search then happened, they opened up the package, they found the cocaine, what was the white powder that ended up being cocaine inside, and it was at that point that the explosive expert was called. So, we don't believe that the explosive expert makes any difference to the legality of the search at the moment that it happened. But he is evidence that there was a reason to think that there could have been something in there. So, you're saying that even though there was a reason there could have been something in there, Soto didn't say there was a reason, didn't explain exactly why he thought there could have been something in there. Even though Soto wasn't the one who made the decision to open it anyway, it was a supervisor. Well, as far as whether there could have been something in there, yes, we do not think that that is sufficient, because that would obviously apply to any closed package that you can't see inside, and we do not believe that the Constitution allows TSA officers doing administrative searches to open up any closed package with nothing more. That's your position. You can't open closed packages at all. You can't open them if there's been a negative explosive screen. I'm not saying you never can. Of course, there's circumstances where either there would be some suspicion developed, but in this case, we know that it went through the available technology, which is what the courts have talked about, is these explosive trace detection machines. It went through them and it was found not to have any explosives. So, at that point, they need something to be able to articulate to give the say that there's suspicion for this invasion of privacy, and they didn't have that in this case, and if the court upheld in this case, it is open season on any package in any bag anywhere in this country by TSA agents. That's not what the cases have ever said. Obviously, I'm over my time, so I'll reserve whatever time I'm permitted to revoke. All right. That's fine. Thank you. We'll give you a minute to revoke. Does the court have another question? Good morning, Your Honors. May it please the court. Christine Rowe on behalf of the United States. Officer Soto's conduct fell within the scope of a valid administrative search, where that search only had one valid programmatic purpose, which was to investigate, identify, and prevent any explosives or prohibited items that could jeopardize the vehicle. Here, once the x-ray alerted or triggered an alarm to an anomaly in the luggage, that is when Officer Soto's conduct was constrained to TSA's valid administrative search scheme, and the record does reflect that Officer Soto did or was confined to a specific TSA protocol. His testimony claims that there was a standard operating procedure. Because the x-ray alerted to an item, he was then mandated by that protocol to identify what that anomaly was, make sure that the anomaly was not a potential danger or threat to airline safety. Because based on that protocol, he did not have an unbridled discretion or broad discretion to do whatever he wanted. Every single thing he did was based on TSA protocol to resolve or remove all threats to airline safety. That is extremely inarticulate. He couldn't at all explain what he was looking for, what could have been in there, why he thought anything could have been in there that wouldn't have been picked up by the explosive screen. The only thing he said was it wasn't in a commercial package. I kept envisioning the baked loaves that I brought when my grandchildren were born down in L.A. They would have looked an awful lot like that package. What was he talking about? He was admittedly a bit inarticulate. He didn't articulate it correctly. The district court point blank said, what do you mean by you're not happy? What do you mean you were not satisfied by the packaging? In ER Exertive Record 153, Officer Soto specifically said he shouldn't have used the word happy. It's not the word he should have used. He had suspicion on the packaging. He still believed the package could contain prohibited items based on the fact that it was homemade packaging. It was an airtight seal. They had foil packaging and plastic many based on his training and experience. That was unusual to him. As the court noted, Officer Soto testified that even though the EDT machine had a negative result, it still did not rule out the possibility for Officer Soto that there could be danger in or an explosive inside the package. When the district judge decided that he didn't believe Officer Soto, that he wasn't looking for drugs, and instead he said, that doesn't matter. What matters is when there was a programmatic reason. Well, that's wrong, isn't it? Doesn't it just seem to be wrong when he said that it doesn't matter why Officer Soto was looking for drugs? It might not matter if he was looking for drugs only, but it did matter whether he was looking for drugs. I think the district court laid it out when it matters and when it does not matter. When the district court came to the conclusion that it does not matter, when Officer Soto's objective intent does not matter, the district court specifically stated and cited to this court's precedent that when there is a permissible administrative search scheme where there is no impermissible secondary programmatic purpose with a broad discretion, then the screener's subjective intent does not matter. And it distinguished the facts here with Bullocon and $124,000. I'm missing a couple of hundred dollars, but in the U.S. currency case. And the district court further distinguished or added the analysis with Orozco. So, suppose we knew that Soto, once there was the screen, was perfectly satisfied that there were no explosives, but he really thought there were drugs in there and that's why he opened it. That wouldn't matter? In this context and the facts here, no, because he did not use the pretext of a valid administrative search to look for drugs. The record clearly shows that he only searched this luggage because the x-ray triggered it. He did not have a confidential... But after the explosive screen, I don't think you could be right about it. I mean, my main concern about this case is whether the district judge applied the wrong standard after he decided that Soto was not believable. I mean, he definitively decided that Soto wasn't believable. And at that point, he seemed to be saying what I just said, that even if Soto was affirmatively, after the screen, said, oh, well, there's no explosives to himself. There's no explosives, but I think there may be drugs in there. I'm going to keep going. That wouldn't make a difference. That can't be right, can it? Respectfully, I don't think the testimony was uncredible. I think it distinguished that he thought... I don't know why he said, first, I've never seen drugs. And then during trial, I found drugs. But he made it clear in his order that his testimony about why he thought the package was suspicious and why he cut open the package had been consistent throughout his suppression testimony, his trial testimony, as well as his motion for reconsideration testimony. And those facts that the court made did not change. And based on those factual findings, the court felt, the district court held that there was no impermissible secondary programmatic search. Therefore, the analysis into Officer Soto's subjective intent does not matter. And he further analyzed in the context of Orozco that there was no pretext. This was not used as a pretext, because the search would have happened. But what the district court said, the court does not need to determine whether Soto intended to use drugs, because he would have said what he did, that this would not justify suppression under the governing law in this circuit. Is that right? And he relies on McCarty, he says the Ninth Circuit has squarely rejected the proposition that an individual offers a subjective motivation to search for evidence of a crime categorically transforms a permissible administrative search into a search to violate the Fourth Amendment. See, McCarty, and he doesn't deal with Orozco until later. And I couldn't really understand what he was saying about Orozco. So I'm just concerned that he really wasn't applying the right standard. Yes, Your Honor, I understand the court's question. But I do, again, respectfully disagree. I think the district court did apply the right standard. He made it clear by first and outlines it in three factors. As long as the search is undertaken pursuant to a legitimate administrative search scheme, two, the searcher's actions are cabined to the scope of the permissible administrative search, and three, there are no impermissible programmatic secondary motive for the search, the development of a second subjective motive to verify the presence of contraband is irrelevant to the Fourth Amendment analysis. And that's what the court did. He went step by step. One, the search was undertaken pursuant to a legitimate administrative search scheme. Two, his conduct was cabined to that valid scope. Three, there was no impermissible programmatic search motive for the search. Therefore, any subjective motive is not relevant to this Fourth Amendment analysis. And then the district court made factual findings pursuant to the analysis of Orozco, where it said, but for the officer's subjective intent, the search would not have happened. Here, the district court... What would happen if Soto testified, I was looking for drugs, but if you had asked his supervisor or any other TSA officer, he or she would have said, I will cut it because it's tightly packed. I don't know what's in it. Potential for explosives. In that kind of situation, is that search still okay? It would be a closer call, Your Honor, because if the screener himself had ruled out the possibility that there was a safety concern, the case law is clear that that's when the scope of the administrative search ends. Then nothing should be... What the district court held. He said that the relevant questions, whether the overall search screen was designed to find evidence of criminal activity, not whether the individual officer carrying out the scheme subjectively intended to search for evidence of crime. So in Judge Lee's hypothetical, it seems to me his answer would be, oh, it's okay. He, according to the hypothetical, maybe, but the district court clearly outlined the circuit's law, cited to McCarty, cited to Orozco, and cited to the standard in Orozco that said, but for the officer's subjective intent, would this search have occurred? And what we have in the record and what the court factually found was that his lead told him to open up the package because they believed it was suspicious. Then the supervisor also believed it could contain an explosive demonstrating that this... We don't know what the supervisor thought. All we know is that the supervisor told him to open the package, but we have no declaration from the supervisor, which is kind of peculiar, actually. We have no idea why the supervisor told him to do this. Based on Officer Soto's testimony, he did say the supervisor agreed with him that the package was suspicious, but other than that, we don't have... You're correct, Your Honor. But the supervisor went above her. Officer Henriquez stated that he believed the package still could be an explosive, specifically C4, based on the white powder. And the fact that it took an explosive specialist to come out to determine that it was not an explosive, it shows that Officer Soto's conduct was reasonable, not more intrusive to the technology that was available to him, and it was confined in good faith, and it was a proper administrative search. Okay, so you are out of time, and thank you very much. Thank you for your argument. Mr. Tippett, it looks like you have an hour. I won't use an hour. Thank you, Your Honor. Two points quickly. First of all, this is the government's burden, and there's no dispute about that, to put on evidence to support the search. So the fact that we don't have an affidavit from the supervisor, the fact that we have no evidence as to what the TSA protocols are in this case, that was the government's responsibility to put that on. The government argues that the search was lawful because it was constrained by TSA protocol, but the only evidence is what Soto said about, I'm going to open something up if I don't feel okay with it. Florida V. Wells is, I believe, directly on point for this. Florida V. Wells invalidates a search when it offers unfettered discretion to an individual officer, an administrative search, and that's what we have here. As to the argument that, well, this was a tightly packed... It's not unfettered discretion. I mean, there is evidence in this record that it could have contained an explosive. I'm not The explosives expert said that it could have contained an explosive. It didn't, but he said it could have. So it's not unfettered. I mean, it has to be something that could have contained an explosive, and it could have. The explosives expert didn't come until the package was open. And you're going back to subjective intent, but if the question is whether the protocol is sufficient, i.e. it has to objectively be something that could have contained an explosive, that standard has been met. I disagree. I think the government needed to present some evidence that there is anything that could actually be packaged like this. We know it didn't have detonators wiring because there's an x-ray image of it that's in the record, that there exists some kind of substance that could be packaged like this that you could put in checked baggage and could explode. And there was no evidence of that. What about the explosive expert? He said it could have been C4. I understand you dispute that, but it certainly suggests that they were looking at somebody who knows something, thought that it could have been an explosive. Well, but the explosives expert didn't. The moment that matters, again, our position is the moment that matters is when he sliced open this package with a knife. And the explosives expert never said that based on what he saw of that package, it could have been an explosive. He didn't say anything about that. The explosives expert actually never testified at all. There was a declaration that he was referenced in. So we believe the government needs more than that. As to, just real quick, as to your honors, Judge Berzon's other point about, you know, if he was subjectively looking for drugs, we think that the evidence is, or I'm sorry, that the case law is very clear. This Courts of Roscoe case specifically says that the subjective intent does matter in these cases, that the district court got it wrong on that point. And at a minimum, the case would need to be remanded for factual findings. We know that this officer was already found not to be credible. We know that the officer either somehow couldn't remember if he had found drugs before or lied about it. The same officer that they're using to justify the search for. And his credibility and his subjective intent does matter, as this court has said. So we would ask the court to reverse remand. Your time is up. United States v. Cash is submitted. We'll go to the next case. Ortega-Reyes, which is the next case, was submitted on the briefs. So the following, the next case is Jalaluddin Ramos v. Barr. And after that, we are going to take a short break.
judges: Siler, Berzon, Lee